IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

APPEAL NO. 23-1343

UNITED STATES,
Appellee,

v.

ANGEL L. VILLODAS-ROSARIO,
Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BRIEF FOR APPELLEE

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

Ricardo A. Imbert-Fernández
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

# TABLE OF CONTENTS

Table of Authorities ..................................................................................... iv

Jurisdictional Statement ............................................................................. 1

Statement of the Issue on Appeal ............................................................ 2

Statement of the Case ................................................................................ 3

Summary of the Argument ........................................................................ 11

Argument ...................................................................................................... 13

**The district court did not err in denying Villodas's compassionate release motion because he did not argue his claimed legal error was an extraordinary and compelling reason. In any event, any error was harmless because he did not present an extraordinary and compelling reason for his requested relief.**

Issue ............................................................................................................ 13

Standard of Review .................................................................................... 13

Discussion .................................................................................................... 13

    A. Villodas did not exhaust his claims ....................................... 14

    B. Absent an applicable policy statement, sentencing errors, standing alone, do not amount to an "extraordinary and compelling" reason for relief .............................................. 17

    C. The compassionate-release statute does not permit Villodas's attack which focuses entirely on the legality and duration of his sentence. ........................................................................ 19

    D. In any event, any error was harmless ................................. 26

    E. Villodas entered into a plea agreement that militates against finding an extraordinary and compelling reason .......... 36

F.  The Sentencing Commission's recently issued amended policy statement counsels against finding an extraordinary and compelling reason here ........................................................ 37

Conclusion ............................................................................................ 42

Certificate of Compliance with Rule 32(a) ...................................... 43

Certificate of Service ......................................................................... 44

**FEDERAL CASES**

Eberhart v. United States, 546 U.S. 12, 19 (2005) ...............................................15

Ferguson v. United States (U.S. brief filed Nov. 1, 2023), (No. 22-1216), 2023

    WL 7276471 ............................................................................... 19, 39

Fiore v. White, 531 U.S. 225 (2001)........................................................................38

Fleming v. Fleming, 264 U.S. 29 (1924) ................................................................39

Fort Bend Cnty v. Davis, 139 S. Ct. 1843, 1849 (2019)......................................15

Gadra-Lord v. Doe, 736 F. Appx 30 (3d Cir. 2018)...........................................15

Gonzalez v. Crosby, 545 U.S. 524 (2005).............................................................30

Henderson v. Shinseki, 562 U.S. 428, 435 (2011)....................................... 15, 39

Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 51 n.6 (1st Cir. 2013) ............17

Rivers v. Roadway Express, Inc., 511 U.S. 298 (1994)......................................39

United States v. Alam, 960 F.3d 831 (6th Cir. 2020) ................................. 14, 15

United States v. Amato, 48 F.4th 61 (2d Cir. 2022)................................... 18, 39

United States v. Barbee, 25 F.4th 531 (7th Cir. 2022)........................................27

United States v. Bond, 56 F.4th 381 (4th Cir.) ...................................................37

United States v. Canales-Ramos, 19 F.4th 56 (1st Cir. 2021).................. passim

United States v. Cortes-Medina, 819 F.3d 566 (1st Cir. 2016) ........................28

United States v. Crandall, 25 F.4th 582 (8th Cir. 2022) ............................. 19, 39

United States v. Escajeda, 58 F.4th 184 (5th Cir. 2023) ............................. 18, 39

United States v. Ferguson, 55 F.4th 262 (4th Cir. 2022) ...................................18

United States v. Franco, 973 F.3d 465, 468 (5th Cir. 2020)........................ 14, 15

United States v. Galiany-Cruz, No. 22-1196, 2023 WL 6458535, at *1 (1st Cir. June 6, 2023) ...............................................................................................27

United States v. Gonzalez, 68 F.4th 699 (1st Cir. 2023)............................. 13, 40

United States v. Hargrove, 30 F.4th 189 (4th Cir. 2022)..................................27

United States v. Havener, 905 F.2d 3, 6 (1st Cir. 1990) ...................................18

United States v. Henderson, 858 F. App'x 466 (3d Cir. 2021)........................18

United States v. Hunter, 12 F.4th 555 (6th Cir. 2021)................................ 27, 28

United States v. Jenkins, 50 F.4th 1185 (D.C. Cir. 2022) ..................... 19, 31, 40

United States v. King, 40 F.4th 594 (7th Cir. 2022) ...........................................30

United States v. Lessard, 35 F.4th 37 (1st Cir. 2022)...........................................3

United States v. Marcussen, 15 F.4th 855 (8th Cir. 2021).................................27

United States v. Marrero-Pérez, 914 F.3d 20 (1st Cir. 2019)............................22

United States v. Martin, 21 F.4th 944 (7th Cir. 2021)................................ 19, 39

United States v. Newton, 996 F.3d 485 (7th Cir. 2021) .....................................27

United States v. Pérez, 977 F.3d 163, 168 (1st Cir. 2020)..................................17

United States v. Raia, 954 F.3d 594 (3d Cir. 2020) .............................................14

United States v. Rivera-Ruiz, 43 F.4th 172 (1st Cir. 2022) ..............................34

United States v. Rondón-Garcia, 886 F.3d 14 (1st Cir. 2018) .........................28

United States v. Roper, 72 F.4th 1097 (9th Cir. 2023) ............................... 19, 40

United States v. Ruvalcaba, 26 F.4th 14 (1st Cir. 2022)...........................passim

United States v. Saladino, 7 F.4th 120 (2d Cir. 2021).......................................14

United States v. Saccoccia, 10 F.4th 1, 3 (1st Cir. 2021)...................... 17, 18, 25

United States v. Texeira-Nieves, 23 F.4th 48 (1st Cir. 2022)..........................14

United States v. Trenkler, 47 F.4th 42 (1st Cir. 2022) .............................passim

United States v. Villodas-Rosario, 901 F.3d 10 (1st Cir. 2018)........................9

United States v. Wesley, 60 F.4th 1277 (10th Cir. 2023)........................... 19, 40

United States v. West, 70 F.4th 341 (6th Cir. 2023)...................................18, 39

Welch v. United States, 136 S. Ct. 1257 (2016) ...................................................32

Wisconsin Cent. Ltd. v. United States, 138 S. Ct. 2067 (2018).......................30

Woodford v. Ngo, 548 U.S. 81 (2006) ..................................................................15

**FEDERAL STATUTES**

18 U.S.C. § 3553(a) ................................................................. 7, 17, 24, 25

18 U.S.C. § 3582(c) ....................................................................17

18 U.S.C. § 3582(c)(1)(A)................................................ 14, 15, 16, 25

18 U.S.C. § 3582(c)(1)(A)(i) .............................................. 25, 39

18 U.S.C. § 924(c)(1)(A)(i) .............................................. 4, 5, 17

18 U.S.C. § 924(c)(1)(B)(ii) ................................................4

18 U.S.C. § 3231....................................................................1

28 U.S.C. § 1291....................................................................1

28 U.S.C. § 2255....................................................................25

## FEDERAL SENTENCING GUIDELINES

U.S.S.G. § 1B1.13(b)(6), (c).............................................. 38, 39

U.S.S.G. § 2K2.4(b) ................................................................5

## OTHER AUTHORITIES

Sentencing Commission Public Meeting Tr. 27-82 (Apr. 5, 2023)..................38

Webster's Third New International Dictionary of the English Language

    Unabridged, 807 (1981) .............................................. 27, 28

# Jurisdictional Statement[1]

This appeal stems from the district court's denial of defendant-appellant Angel L. Villodas-Rosario's motion for compassionate release in Criminal Case No. 14-663 in the District of Puerto Rico. The district court had original jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3582(c)(1)(A)(i). The district court denied Villodas's motion on March 28, 2023. (AD 1-2). He timely filed his notice of appeal one day later. (AA 12).

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] Citations to "DE" refer to a Docket Entry in the underlying criminal case; "AB," to the Appellant's Brief; "AD" to the Appellant's Addendum; "AA," to the Appellant's Appendix; and "SA," to the Appellant's Sealed Appendix.

STATEMENT OF THE ISSUE ON APPEAL

**Whether the district court erred in ruling that the sentencing errors Villodas had alleged did not amount to an extraordinary and compelling reason for a sentence reduction.**

**STATEMENT OF THE CASE**

## A. Villodas Knowingly Possesses a Machinegun in Furtherance of a Drug-Trafficking Offense[2]

In October 2014, Puerto Rico police agents executed search warrants on Villodas's home and a car. (SA 4). In the car, the agents found a 9mm Glock Model 17 pistol loaded with 18 rounds of ammunition. (SA 5). The pistol had been modified to operate as a fully automatic machinegun. (SA 5). The agents also found $7,000 in money orders. (SA 5). In Villodas's house, the agents found a drum magazine containing 49 rounds of 9mm ammunition, an extended magazine containing 17 rounds of 9mm ammunition, 1.5 kilograms of marihuana, 24 vials of Xylazine (a horse tranquilizer), a digital scale, and $5,134 in cash. (SA 4–5). Villodas admitted that the Glock pistol, high-capacity magazines, ammunition, marihuana, and money all belonged to him. (SA 5–6). He also admitted that he knew the pistol was a machinegun, and he claimed that he had bought it for protection. (SA 5).

---

[2] Because Villodas pleaded guilty, the relevant facts are taken from the uncontested presentence investigation report. *See United States v. Lessard*, 35 F.4th 37, 40 (1st Cir. 2022).

Villodas had previously been federally convicted of a felony drug-trafficking offense. (SA 5, 7).

## B. Villodas Pleads Guilty Pursuant to a Favorable Plea Agreement

A grand jury charged Villodas with possessing marihuana with intent to distribute, possessing a machinegun in furtherance of a drug trafficking crime, possessing a firearm in furtherance of a drug trafficking crime, and being a convicted felon possessing a firearm.[3] The machinegun charge alone carried a consecutive mandatory-minimum sentence of 30 years in prison. 18 U.S.C. § 924(c)(1)(B)(ii), (D)(ii).

Villodas entered into a plea agreement with the United States pursuant to which he would plead guilty to possessing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)(i), and the United States would dismiss the other charges, including the machinegun charge. (DE 35). This dropped Villodas's minimum sentencing exposure from 360 months in prison to 60 months. (DE 62 at 14-16). Notwithstanding that his statutory-minimum and Guidelines sentence would be 60 months in prison, the parties agreed that the United States could recommend a sentence of up to 204

---

[3] In violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D), 18 U.S.C. § 924(c)(1)(B)(ii), 18 U.S.C. § 924(c)(1)(A)(i), and 18 U.S.C. § 922(g)(1), respectively.

months and Villodas could ask for a sentence of as low as 96 months. (DE 35 at 3). The agreement also contained a provision under which Villodas would waive his right to appeal if the district court sentenced him at or below 204 months. (DE 35 at 4).

At the change-of-plea hearing, Villodas's counsel confirmed that the parties had agreed to recommend a "range" of sentences above Villodas's 60-month Guidelines sentence. (DE 61 at 13-14). The parties had agreed to recommend those variant sentences because the machinegun charge, with its 360-month minimum sentence, was going to be dismissed. (DE 61 at 14; DE 62 at 14-16). After making sure the plea was both knowing and voluntary and supported by facts, the district court accepted Villodas's guilty plea as to the § 924(c)(1)(A)(i) charge. (DE 61 at 7-9, 12, 16).

## C. The District Court Imposes a 144-Month Variant Sentence

The U.S. Probation Office prepared a pre-sentence report (PSR) finding that the Guidelines sentence for Villodas's offense was "the minimum term of imprisonment required by statute," i.e., 60 months. (SA 13 (citing U.S.S.G. § 2K2.4(b)). The PSR said that, in January 2000, Villodas had been sentenced in federal district court to 47 months' imprisonment for aiding and abetting the possession with intent to distribute of at least 4, but less than 5 grams of

cocaine. (SA at 7). And it noted that Puerto Rico had charged Villodas with,

but did not convict him of, the following offenses:

| Year | Charge | Resolution |
|---|---|---|
| 1999 | Possession and distribution of controlled substances | Dismissed because Villodas was detained for thirty days after his arrest without a preliminary hearing |
| 1999 | Carrying a pistol magazine without a license | Dismissed without prejudice by the Puerto Rico Department of Justice |
| 1999 | Possession and distribution of controlled substances | Dismissed without prejudice by the Puerto Rico Department of Justice |
| 1999 | Employment of minors in the vending of drugs | Dismissed without prejudice by the Puerto Rico Department of Justice |
| 1999 | Possession and distribution of controlled substances | Dismissed without prejudice by the Puerto Rico Department of Justice |
| 2004 | Possession and distribution of controlled substances | No probable cause found |
| 2008 | First Degree Murder | No probable cause found |
| 2008 | Carrying and using a firearm without a license | No probable cause found |
| 2008 | Aiming or shooting a weapon | No probable cause found |

(SA 7-9).

At the July 2015 sentencing hearing, the district court agreed with the

unobjected-to PSR that Villodas's Guidelines sentence was the statutory

minimum of 60 months in prison. (AA 50-51). The court then noted that it had the authority to impose a sentence of up to life. (AA 51).

Pursuant to the plea agreement, the United States recommended a sentence of "at least 120 months" but not more than 204 months. (AA 23-24, 49). And Villodas recommended a sentence of 96 months. (AA 42). Villodas pointed out that his sentencing recommendation was "three years above the minimum." (AA 31). In this regard, the district court observed that the parties, "knowing how serious this case was, [had] stipulated on [their] own . . . [to] a voluntary variance." (AA 31).

After considering the parties' recommendations and the pertinent § 3553(a) factors, the district court imposed a 144-month sentence. (AA 53).

Before imparting its sentence, the district court alluded to some of the dismissed Puerto Rico charges detailed in the PSR. (AA 28-30). Specifically, the court noted Villodas's three arrests and five charges in 1999. (AA 28-30; SA 7-8). And it discussed the circumstances of their dismissals. (AA 28-30). Villodas said that those charges were dismissed because he was charged in federal court for the same conduct. (AA 35). "The case was brought here, and he was sentenced before your Honor," Villodas's counsel said. (AA 35).

The court also referred to Villodas's 2004 charge for possessing and distributing controlled substances, noting it was dismissed on a finding of no probable cause. (AA 30). Referring to Villodas's 1999 and 2004 charges, the court said they were "[i]ndicators of a showing of potential involvement in criminal conduct, which is consistent with what he has as convictions and with what he has by way of conviction that we're going to sentence him today with." (AA 30-31). Villodas counsel later agreed with the court that Villodas's "record" showed that he "ha[s] a predisposition." (AA 42).

Further, the court considered Villodas's history and characteristics, including his education, intelligence, and history of substance abuse, and noted that this was his seventh known arrest and second conviction. (AA at 51). Then, the court focused heavily on his offense conduct (including that he had possessed a pistol modified to be a machinegun, multiple extended magazines, and numerous rounds of ammunition), Puerto Rico's problem with firearms and violence, the need for deterrence, and the party's variant sentencing recommendations. (AA 51-55).

Villodas subsequently appealed his sentence, but this Court enforced his plea agreement's waiver-of-appeal provision because the sentence fell

below the 17-year ceiling agreed to by the parties. *See United States v. Villodas-Rosario*, 901 F.3d 10, 19 (1st Cir. 2018).

**D.    Villodas Moves for Compassionate Release Based Solely on a Claim of Legal Error**

Villodas moved for compassionate release in 2023. (AA 64-80). He asserted that the district court impermissibly considered his 1999 and 2004 dismissed charges at sentencing. (AA 64-65). Although he said in an argument heading that this sentencing error is an "extraordinary and compelling reason" for a sentence reduction (AA 72), he did not make, let alone develop, that argument in the body of his motion (*see* AA 72-76). Instead, he assumed that he would warrant the "remedy" of a sentence reduction on proving that error. (AA 77). And he did not argue that any other circumstance constituted an extraordinary and compelling reason for relief. (*See* AA at 64-80). Towards the end of his motion, Villodas reweighed the sentencing factors. (AA 77-80).

The government opposed Villodas's motion. (AA at 81-88).

**E.    The District Court Denies Villodas Compassionate Release**

The district court denied Villodas's motion. (DE 108). It held Villodas could not raise his arguments in a compassionate-release motion because he had attacked only his sentence's legality and duration. (DE 108). Quoting

*United States v. Trenkler*, 47 F.4th 42, 48 (1st Cir. 2022), the district court noted that the compassionate-release statute is "addressed to the court's discretion as to whether to exercise leniency based on an individualized review of a defendant's circumstances" and that it "is not a demand of a district court to recognize and correct" an illegal sentence. (AD 1-2). Finally, the court noted that Villodas had been sentenced "within the range contemplated in his plea agreement." (AD 1-2).

This appeal follows.

## SUMMARY OF THE ARGUMENT

Villodas did not exhaust administrative remedies. The relief he requested in his administrative compassionate release petition is different than the relief he requested in his federal court motion. Even if this Court bypasses Villodas's failure to exhaust, his appeal fails.

Villodas did not request compassionate release at all from the district court, but rather presented a claim of sentencing error and demanded the court correct it. Although First Circuit precedent allows courts to consider sentencing errors in an extraordinary-and-compelling-reasons analysis, it does not allow for bare attacks on the legality of a sentence.

Villodas in any event did not carry his burden of establishing an extraordinary and compelling reason. In fact, he did not even attempt to make this required showing. He also failed to show how a sentencing error, standing on its own, could amount to an extraordinary and compelling reason. Nor could he: There is nothing extraordinary or compelling about the error Villodas alleges.

 The facts of the case also cut against Villodas's arguments. He admitted to the conduct underlying all but one of the charges the court mentioned. Plus, any consideration of those charges did not drive the court's

sentence. And, to boot, Villodas's plea agreement and the recent amendments to the Sentencing Commission's policy statement weigh against finding an extraordinary and compelling reason in this case.

**The district court did not err in denying Villodas's compassionate release motion because he did not argue his claimed legal error was an extraordinary and compelling reason. In any event, any error was harmless because he did not present an extraordinary and compelling reason for his requested relief.**

## Issue

Villodas argues that the district court's denial of his compassionate release motion on the ground that it attacked only the legality and duration of his sentence conflicts with First Circuit precedent. (AB at 20-27). He also maintains that this purported error was not harmless. (AB at 28-29).

## Standard of Review

This court reviews "a district court's denial or grant of a compassionate release motion for abuse of discretion." *United States v. Gonzalez*, 68 F.4th 699, 702 (1st Cir. 2023) (citation omitted). "Questions of law are reviewed de novo and findings of fact are reviewed for clear error." *Id.*

## Discussion

This Court should affirm the denial of Villodas's motion for compassionate release because he failed to exhaust his claims, and because he merely attacked the legality of his sentence and made no effort to establish that his claimed legal error constituted an "extraordinary and compelling"

reason for compassionate release. Thus, the district court was right to call his motion what it was: an incognizable attempt to litigate and correct a claimed legal error, rather than a plea for compassionate release premised on a showing that exceptional individualized circumstances justified the grant of relief.

A.    *Villodas did not exhaust his claims*

18 U.S.C. § 3582(c)(1)(A) provides, as relevant, that a defendant may move a district court for a sentence reduction "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of [his] facility, whichever is earlier." That provision sets forth "a paradigmatic mandatory claim-processing rule." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020); *cf. United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022) (citing *United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) (per curiam)); *see United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (holding that § 3582(c)(1)(A)'s exhaustion requirement is a mandatory claim-processing rule); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (concluding that a prisoner's failure to exhaust his motion for a sentence reduction under § 3582(c)(1)(A) "presents a glaring roadblock

foreclosing compassionate release"); *see also Fort Bend Cnty v. Davis*, 139 S. Ct. 1843, 1849 (2019) (explaining that claim-processing rules are "nonjurisdictional," "promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," and are "'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it") (alteration in original) (first quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011); then quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam))).

18 U.S.C. § 3582(c)(1)(A), moreover, "specifies what a defendant must do before she files a motion for compassionate release in federal court. Specifically, a defendant must submit a request to 'the Bureau of Prisons to bring a motion on the defendant's behalf.'" *Franco*, 973 F.3d at 468 (quoting 18 U.S.C. § 3582(c)(1)(A)); *accord Alam*, 960 F.3d at 833–34. "An untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the exhaustion requirement, thereby precluding an action in federal court." *Gadra-Lord v. Doe*, 736 F. Appx 30, (3d Cir. 2018) (per curiam); *see Woodford v. Ngo*, 548 U.S. 81, 84, 84, 90–91 (2006).

Here, because Villodas requested qualitatively different reliefs, he did not comply with § 3582(c)(1)(A)'s mandatory claim-processing procedure.

Indeed, Villodas asked the BOP to be *immediately released* based on a purported sentencing error and his young age at the time of his offense. (AA 99-100). But, in federal court, he requested only that his sentence be *reduced by 18 months* based on the purported sentencing error without mention of any other individual circumstances that would speak to finding an extraordinary and compelling reason. (AA 65 (asking the court to "temper [his] 12-year sentence, returning it to the realms of reasonableness by granting a modest 18-month sentence reduction"), 80). These are substantially different requests. In a similar sense, if someone applies to a bank for a million-dollar loan and the bank denies the application, that does not mean that the same bank would not have approved a $100,000 loan to the same applicant. Just like the bank was never presented with or passed upon the latter loan request, the BOP here was never presented with or passed upon the request for an 18-month reduction. Therefore, because Villodas made qualitatively different requests, he did not comply with § 3582(c)(1)(A)'s mandatory claim-processing procedure.

And the United States challenged Villodas's motion compliance with the claim-processing rule below. Even if it hadn't, the United States may also raise for the first time on appeal Villodas's failure to exhaust because the

issue represents a basis of affirmance. *See Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 51 n.6 (1st Cir. 2013) ("Affirming the dismissal [of plaintiffs' claims] using [defendants' failure-to-exhaust] reasoning would be an appropriate exercise of our ability to affirm on any basis present in the record . . . ."); *see also United States v. Pérez*, 977 F.3d 163, 168 (1st Cir. 2020) (observing in a criminal case that this Court may affirm "on any basis apparent in the record").

B. *Absent an applicable policy statement, sentencing errors, standing alone, do not amount to an "extraordinary and compelling" reason for relief.*

Compassionate release represents "a narrow exception to the general rule that '[t]he court may not modify a term of imprisonment once it has been imposed.'" *United States v. Saccoccia*, 10 F.4th 1, 3 (1st Cir. 2021) (quoting 18 U.S.C. § 3582(c)). A district court may grant a sentence reduction if it finds that "extraordinary and compelling reasons warrant such a reduction," and if it also finds that a reduction would be consistent with (1) the applicable factors in 18 U.S.C. § 3553(a), and (2) the "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). To satisfy the threshold burden of showing an extraordinary and compelling reason, a defendant must establish that his "situation constitutes the type of 'extreme

hardship' that the compassionate-release statute is designed to ameliorate."
*Saccoccia*, 10 F.4th at 4 (quoting *United States v. Havener*, 905 F.2d 3, 6 (1st Cir. 1990)). At the time the district court decided Villodas's motion, there was no applicable policy statement from the Sentencing Commission setting forth which reasons can qualify as extraordinary and compelling. *See United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022).

In the absence of a policy statement, a district court "may consider any complex of circumstances . . . as forming an extraordinary and compelling reason warranting relief." *Id.* at 28. But the mere fact that a circumstance may be considered does not mean that it is legally sufficient to warrant relief. This Court has clarified that "classic post-conviction arguments, without more," do not amount to an "extraordinary and compelling" reason for a sentence reduction. *Trenkler*, 47 F.4th at 48.[4]

---

[4] Nearly every circuit to consider the question has held that a claimed error in a defendant's judgment cannot provide extraordinary and compelling reasons for a sentence reduction, and that a defendant cannot resort to Section 3582(c)(1)(A)(i) to circumvent the normal process of direct and collateral review. *See, e.g.*, *United States v. Amato*, 48 F.4th 61, 65 (2d Cir. 2022) (per curiam); *United States v. Henderson*, 858 F. App'x 466, 469 (3d Cir. 2021) (per curiam) (unpublished); *United States v. Ferguson*, 55 F.4th 262, 270-72 (4th Cir. 2022); *United States v. Escajeda*, 58 F.4th 184, 188 (5th Cir. 2023); *United States v. West*, 70 F.4th 341, 346-47 (6th Cir. 2023); *United States v.*

C.    *The compassionate-release statute does not permit Villodas's attack which focuses entirely on the legality and duration of his sentence.*

In his compassionate-release motion, Villodas acknowledged that he needed to prove an "extraordinary and compelling" reason for a sentence reduction. (AA 70). He then said in an argument heading that his asserted sentencing error "constitute[d] an extraordinary and compelling reason." (AA 72). But he did not later argue that the error amounted to such a reason. (*See* AA 72-76). Instead, he simply set forth the claim of error and demanded the district court correct it. (AA 77 ("Mr. Villodas was not sentenced on a constitutionally permissible basis, so the question becomes one of remedy.")). So Villodas, represented by the Federal Public Defender, effectively asked the court to entertain a sentencing error, viewed only as a sentencing error,

---

*Martin*, 21 F.4th 944, 945-46 (7th Cir. 2021) (per curiam); *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022); *United States v. Wesley*, 60 F.4th 1277, 1283-86 (10th Cir. 2023); *United States v. Jenkins*, 50 F.4th 1185, 1200-04 (D.C. Cir. 2022); *see also United States v. Roper*, 72 F.4th 1097, 1102 (9th Cir. 2023) (noting issue, but explaining that the defendant there "does not claim that his original sentence violated the Constitution or federal law"). Although the government has consistently and staunchly maintained, and still maintains, that both *Ruvalcaba* and *Trenkler* were wrongly decided, *see* Brief for the United States in Opposition at 10-22, *Ferguson v. United States* (U.S. brief filed Nov. 1, 2023), (No. 22-1216), 2023 WL 7276471 (U.S.), it does not contest that their precedent bound the district court in this case.

in a compassionate-release motion. The court properly rejected this attempt to broaden the scope of the compassionate-release statute.

Although this Court allows any circumstance to play a role in creating an extraordinary and compelling reason, "the compassionate release statute is addressed to the court's discretion as to whether to exercise leniency based on an individualized review of a defendant's circumstances (it is not a demand of a district court to recognize and correct what a defendant says is an illegal conviction or sentence)." *Trenkler*, 47 F.4th at 48 (citing *Ruvalcaba*, 26 F.4th at 26). So, a motion that pays mere lip service to the compassionate-release statute's legal standards on its way to demanding the correction of a purported sentencing error does not comport with the statute.

That is what Villodas's motion did: while he could have presented a sentencing error[5] as a circumstance or part of a set of circumstances

---

[5] Though Villodas at times uses the terms "change in the law" and "legal error" interchangeably, they are not the same. Indeed, *Ruvalcaba* dealt with a change in the law and *Trenkler* separately dealt with an error based on intervening judicial decisions. In essence, changes in the law can only be affected by congressional amendment or enactment of statutory provisions, while legal errors based on intervening judicial decisions merely reflect judicial interpretation of legal provisions. They are thus not changes of law. The difference is explained more thoroughly below. *See*, *infra*, p. 35-37.

warranting relief, he did not do so. Instead, he only flat-out attacked the sentencing error without paying any heed to the compassionate release framework.[6]

Right off the bat, he categorized his sentence as unlawful and called for the district court to "return[] it to the realm of reasonableness" by reducing his sentence. (AA 65). He briefly recounted his arrest, indictment, plea agreement, and conviction and then focused extensively on describing the sentence imposed and the improper considerations that purportedly weighed on the sentencer's mind. (AA 66-70). Next, under a heading in which he announced he would establish that his claim of legal error was an extraordinary and compelling reason, Villodas argued, without more, that the sentencing court committed the legal error he claims. (AA 72-76). Here is the crux of his argument:

> Clearly, the sentencing judge's unsupported finding that Mr. Villodas had a more serious past than his record suggested, and the decision to impose a drastic 144-month sentence, was partly

---

[6] Villodas on appeal argues that he complemented his claim of error with a complex of circumstances that could together serve as an extraordinary and compelling reason. (AB at 11). As will be explained below, that is not the case. *See*, *infra*, p. 23-25. And Villodas's pleadings below are not entitled to lessened scrutiny because he was not proceeding pro se, but rather represented by the same counsel on appeal from the Federal Public Defender.

driven by mere charges that did not result in conviction. The sentencing judge's own words show that it equated these charges with Mr. Villodas's guilt for the underlying conduct. To do so without more was improper. *See United States v. Marrero-Pérez*, 914 F.3d 20, 23 (1st Cir. 2019) ("[T]o equate arrest with guilt is by now both error and obviously so.").

(AA at 74).

Villodas's motion is devoid of any advocacy that the claimed error constituted an extraordinary and compelling reason. Indeed, he summed it all up by proclaiming to the court that "[e]vidently, Mr. Villodas was not sentenced on a constitutionally permissible basis, so the question becomes one of remedy." (AA at 79). That sentence is a microcosm of Villodas's entire motion and argument: an exposition of a purported legal error and a demand it be corrected. (*See also* AA 91 (advocating for the district court to "rid the sentence of its due-process-denying rot"); AA 95 ("[S]hould [the district court] dispense the antidote necessary to restore the lawfulness of the sentence? The answer is 'yes.'")). But, again, compassionate release "is not a demand of a district court to recognize and correct what a defendant says is an illegal . . . sentence." *Trenkler*, 47 F.4th at 48 (citing *Ruvalcaba*, 26 F.4th at 26). Since Villodas's motion demanded the district court recognize and correct what he said was an illegal sentence (as opposed to requesting

the court exercise leniency based on an individualized review of his circumstances), the motion exceeded the purview of the compassionate-release statute.

True, a sentencing error may be presented as a circumstance showing that a defendant has an extraordinary or compelling reason for a sentence reduction. But the problem with Villodas's motion is that he forwent arguing how his alleged sentencing error rises to the degree of an extraordinary and compelling reason. That omission dooms him, and this Court's precedent is clear: While a legal error may form part of an extraordinary-and-compelling-reason inquiry, a compassionate-release motion is not a vehicle to attack a legal error and demand it to be corrected. *See Trenkler*, 47 F.4th at 48.

Villodas attempts to rewrite the record on appeal, now saying that he moved for compassionate release "based on a combination of 'extraordinary and compelling' reasons'" and that the "most salient ones involved intervening changes in the law." (AB at 11). But that is simply not true.[7] His

---

[7] Because he did not present this argument below, it is waived. *See Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 59 (1st Cir. 2021) ("appellants cannot raise an argument on appeal that was not squarely and timely raised in the trial court" (cleaned up)). To the extent Villodas now argues that he "clarified" this point in his reply below, arguments raised for the first time in a reply

motion did not present any other circumstances as a reason to find that he had an extraordinary and compelling reason. (*See* AA 72-76).

The only mention of something besides the sentencing error came near the end of his motion, where Villodas weighed the § 3553(a) sentencing factors, explaining how they did not preclude granting him compassionate relief. (AA 77-80). But he did not claim that those considerations supported a finding of an extraordinary and compelling reason or inform that analysis in any way. In fact, he separated the § 3553(a) portion of his motion from his extraordinary-and-compelling-reason argument by prefacing the latter with: "Evidently, Mr. Villodas was not sentenced on a constitutionally permissible basis, so the question becomes one of remedy." (AA 79). Moreover, in his motion, he identified his claim of sentencing error as the only "Ground for Compassionate Release." (AA 71). He later doubled down in his reply by stating that he was "asking the [district court] to assess new, intervening changes in the caselaw [(*i.e.*, his claim of sentencing error)] against the extraordinary-and-compelling-reasons standard; to reweigh the sentencing factors; and to grant [the requested relief]." (AA 92).

---

are also waived. *See United States v. Vanvliet*, 542 F.3d 259, 265 n.3 (1st Cir. 2008); D.P.R. Local Rule 147(c).

His decision to do so makes sense: A compassionate-release motion calls for two separate analyses. First, a district court must determine whether any circumstance or combination of circumstances is an extraordinary and compelling reason for relief. 18 U.S.C. § 3582(c)(1)(A)(i); *Saccoccia*, 10 F.4th at 4. Second, the court must assess whether a reduction would be consistent with the § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A); *Saccoccia*, 10 F.4th at 4. Villodas's motion properly reflected that framework, and it is too late for him to try to reshape the scope and content of the arguments in his motion. The bottom line is that Villodas argued, independently of his reweighing of the § 3553(a) factors, that his lone extraordinary and compelling reason was a claim of legal error, and he demanded its correction.

Villodas also misreads the district court's order. He asserts the court "denied the sentence-reduction motion on the precedent-defying conclusion that 28 U.S.C. § 2255 barred it from considering an intervening change in the law or a sentencing error an 'extraordinary and compelling' reason within the meaning of § 3582(c)(1)(A)." (AB 16). To the contrary, the district court's decision stood firmly behind this Court's decision in *Trenkler* in holding that it could not consider Villodas's sentencing challenge because:

> [T]he First Circuit has explained that "the compassionate release statute is addressed to the court's discretion as to whether to exercise leniency based on an individualized review of a defendant's circumstances (it is not a demand of a district court to recognize and correct what a defendant says is an illegal conviction or sentence)." *U.S. v. Trenkler*, 47 F.4th 42, 48 (1st Cir. 2022) (citations omitted).

(AD 1-2). The district court did not deny, as *Ruvalcaba* and *Trenkler* held, that changes in the law and legal errors may be considered as circumstances that inform whether extraordinary and compelling reasons exist in a defendant's case. Had Villodas argued that his claimed legal error was an extraordinary and compelling reason, the *Ruvalcaba* and *Trenkler* framework for assessing extraordinary and compelling reasons would have come into play. But as it stands, he did not, and it thus could not.

The district court was therefore right to reject Villodas's attempt to use a compassionate-release motion to correct a sentencing error, with only lip service paid to the extraordinary-and-compelling-reason test that he both acknowledged and then eschewed. This Court should affirm.

### D.    *In any event, any error was harmless*

In any event, even if the district court erred in denying Villodas's motion on procedural grounds, the error was harmless.

*a. Villodas did not establish that the alleged sentencing error constitutes an extraordinary and compelling reason for a sentence reduction*

Villodas bore the burden of showing his claim of sentencing error was an extraordinary and compelling reason. *See United States v. Galiany-Cruz*, No. 22-1196, 2023 WL 6458535, at *1 (1st Cir. June 6, 2023), cert. denied, No. 23-5699, 2023 WL 7117254 (U.S. Oct. 30, 2023) (citing *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021)); *see also United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022); *United States v. Barbee*, 25 F.4th 531, 532 (7th Cir. 2022); *United States v. Marcussen*, 15 F.4th 855, 857 (8th Cir. 2021). "The plain meaning of 'extraordinary' suggests that a qualifying reason must be a reason that is beyond the mine-run either in fact or in degree." *United States v. Canales-Ramos*, 19 F.4th 561, 566–67 (1st Cir. 2021) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED, 807 (1981) (defining "extraordinary" as "going beyond what is usual, regular, common, or customary"); and then citing *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (suggesting that such reason must be "most unusual," "far from common," or "hav[e] little or no precedent")). Because,

as explained, Villodas merely made a claim of legal error[8] and demanded it be corrected without explaining why that error was extraordinary, he fell short of his burden to show a reason "beyond the mine-run either in fact or in degree." *Id.* He did not even attempt to make this showing.

Meanwhile, the "plain meaning of 'compelling' suggests that a qualifying reason must be a reason that is both powerful and convincing." *Id.* at 567 (citing WEBSTER'S THIRD, *supra*, at 462 (defining "compelling" as "forcing, impelling, [or] driving [circumstance]" and as "tending to convince or convert by or as if by forcefulness of evidence"); and then citing *Hunter*, 12 F.4th at 562). But for the same reasons he failed to show his claim of legal error was an extraordinary reason, Villodas failed to show his claim of legal error was also a reason "both powerful and convincing." *Id.* Again, he did not even attempt to make this requisite showing.

---

[8] Although Villodas insists he raised two separate claims of error, they are really one and the same. He argues that the court both considered charges that did not result in a conviction and improperly read into the state court's dismissals of the same charges as inappropriate. But painting the state dismissals negatively is a step towards, or part and parcel of, considering a bare charge as proof of the underlying conduct. *See United States v. Cortes-Medina*, 819 F.3d 566, 576 (1st Cir. 2016) (Lipez, J. dissenting) (treating district court's assumptions about a state court dismissal as part of a considering-charges-as-proof-of-conduct error); *United States v. Rondón-Garcia*, 886 F.3d 14, 26 (1st Cir. 2018) (same). Regardless, the arguments herein apply to both.

Villodas's failure to shoulder the burden could perhaps be excused if *all* claims of legal error, *as a categorical rule*, amounted to an extraordinary and compelling reason. But this Court has never taken that position. *See Trenkler*, 47 F.4th at 48-50, 42; *Ruvalcaba*, 26 F.4th 14; *Canales-Ramos*, 19 F.4th at 567-69. In fact, in *Canales-Ramos*, it embraced the opposite view and found that the legal error claimed there did not cross the extraordinary-and-compelling threshold. 19 F.4th at 567-69.

The brunt of it: Villodas had an obligation to establish that his claimed legal error amounted to an extraordinary and compelling reason. Because he disregarded that obligation, his compassionate release motion was sunk from the get-go.

      *b. Villodas did not show that a sentencing error, standing alone, constitutes an extraordinary and compelling reason for a sentence reduction*

What is more, claims of legal error by themselves can never cross the threshold of amounting to an extraordinary and compelling reason. This Court said in *Ruvalcaba* that "a change in sentencing law, standing alone, cannot suffice." *Trenkler*, 47 F.4th at 50 (citing *Ruvalcaba*, 26 F.4th 14). And in *Trenkler*, it said that the extraordinary-and-compelling standard "naturally

precludes classic post-conviction arguments, without more, from carrying such motions to success." *Id*. at 48.

To the extent Villodas claims that *Marrero-Pérez* establishes an error that occurred at his sentencing, such a circumstance cannot be categorized as extraordinary and compelling. *Marrero-Pérez*'s intervening development in sentencing law is neither an "extraordinary" nor a "compelling" reason for a sentence reduction under Section 3582(c)(1)(A)(i). Consistent with the "'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute,'" *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018), the word "extraordinary" should, again, be understood to mean "most unusual," "far from common," and "having little or no precedent." *Canales-Ramos*, at 566-67 (1st Cir. 2021). And there is "nothing 'extraordinary' about new . . . caselaw, or a contention that the sentencing judge erred" in light of such caselaw, because such developments "are the ordinary business of the legal system." *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022); *cf. Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005) (observing that "[i]t is hardly extraordinary that subsequently, after

petitioner's case was no longer pending, th[e Supreme] Court arrived at a different interpretation" of a federal statute).

An intervening development in sentencing law likewise cannot constitute a "compelling" reason for a sentence reduction. When Congress enacted the Sentencing Reform Act of 1984, "compelling," again, meant (and still means) "forcing, impelling, driving." *Canales-Ramos*, 19 F.4th at 567. Thus, for a reason to be "compelling" under Section 3582(c)(1)(A)(i), it must provide a "powerful and convincing" reason to disturb the finality of a sentence. *United States v. Jenkins*, 50 F.4th 1185, 1197 (D.C. Cir. 2022) (internal quotation marks omitted). "But given the availability of direct appeal and collateral review under section 2255 of title 28," there is no powerful and convincing reason to allow prisoners to seek a sentence reduction under Section 3582(c)(1)(A)(i) based *only* on a claim of sentencing error. *Id.* at 1200. Villodas could have argued his claim of sentencing error on appeal, but he did not, nor did he file a collateral attack based on that claim.

Accordingly, an intervening development in sentencing law cannot on its own serve as an "extraordinary" and "compelling" reason for a sentence reduction. *See Trenkler*, 47 F.4th at 50 ("classic post-conviction arguments,"

without more, cannot succeed). And that is the only reason Villodas raised below.

Moreover, Villodas does not assert that *Marrero-Pérez* is retroactively applicable to his sentence, and it is not. *See Welch v. United States*, 136 S. Ct. 1257, 1264-65 (2016). Even if *Marrero-Pérez* created a new rule of criminal procedure (it did not), nothing is extraordinary about a sentence reflecting prevailing caselaw at the time it was imposed. So, far from being unusual, uncommon, or unprecedented, Villodas's sentence would simply reflect the caselaw at the time he was sentenced. And any potential disparity between his sentence and the sentence he might receive today would merely reflect the operation of ordinary nonretroactivity principles.[9]

A new nonretroactive procedural rule based on caselaw likewise cannot constitute a compelling reason for a sentence reduction. Ordinary principles of nonretroactivity already consider, and reject, the notion that all

---

[9] In *Teague v. Lane*, the Supreme Court held that new rules of criminal procedure announced in one case will not generally be given retroactive effect in cases that were final before the rule was announced. 489 U.S. 288 310-11 (1989). The "[a]pplication of constitutional rules not in existence at the time a conviction became final," the Court explained, "seriously undermines the principle of finality which is essential to the operation of our criminal justice system." *Id.* at 309.

new rules should be allowed to disturb final convictions and sentences. The very point of the doctrine is to identify the small subclass of developments that should be applied retroactively. To treat a nonretroactive rule as a "compelling" reason to disturb a final sentence would thus undo the balance already struck by ordinary nonretroactivity principles.

Accordingly, a nonretroactive change in caselaw is not on its own an extraordinary and compelling reason for a sentence reduction.

### c. Any argument that Villodas's claim of error is an extraordinary and compelling reason is undermined by the facts of the case

Even if Villodas's had explained why, in his view, his claim of legal error was an extraordinary and compelling reason, the facts underlying his claim of legal error work against such a finding.

Villodas argues, based on *Marrero-Pérez*, that the sentencing court erred in 2015 when it considered his four arrests and the corresponding six dismissed state charges without proof that he had engaged in, or was guilty of, the underlying conduct. To be sure, the sentencing court said that those charges were "[i]ndicators of a showing of potential involvement in criminal conduct." (AA at 30-31). But in response to the court's concern over the five dismissed charges from 1999 (which included three charges for possessing

and distributing controlled substances on different dates in May and June at the same location, one for carrying a pistol magazine loaded with eight bullets, and one for employing minors in the vending of drugs), Villodas said that they were dismissed because "they ended up in" his prior federal conviction for aiding and abetting the possession with intent to distribute controlled substances. (AA at 35; *see also* D.P.R. Crim. No. 99-206 (JAF), DE 46 (PSR for prior federal conviction) (listing the 1999 drug arrests within the offense conduct)). "The case was brought here, and he was sentenced before your Honor," Villodas's counsel told the court. (AA at 35). In doing so, he necessarily admitted to the conduct underlying those five charges. So, his conduct underlying three of the four arrests and five of the six dismissed state charges that he faults the court for considering were supported by his own admissions at sentencing. (AA 28-31). Those admissions were enough for the court to reliably credit those arrests and charges. *See United States v. Rivera-Ruiz*, 43 F.4th 172, 182 (1st Cir. 2022). And while the court also mentioned his 2004 arrest and charge, it only mentioned it in conjunction with the admitted-to 1999 arrests and charges, and not by itself. (AA 30-31,

35).[10] That cannot have pushed the needle. The record of what transpired at his sentencing waters down any argument that Villodas's claim of error is extraordinary and compelling.

To boot, any consideration of the dismissed arrests and charges did not drive the court's sentence. And claimed errors that have a limited effect on the outcome of a defendant's sentence are not extraordinary and compelling. *See Canales-Ramos*, 19 F.4th at 568 (finding a claimed legal error not to be compelling where the defendant had "provided no evidence of any disparity between" his sentence and the one "that would have resulted" absent the claimed error). Indeed, in explaining its sentence, the court focused heavily on the offense conduct (including that Villodas had possessed a machinegun, multiple extended magazines, and many bullets), Puerto Rico's problem with firearms and violence, the need for deterrence, and the party's variant sentencing recommendations. (AA 51-55). Because the court's reliance on these permissible sentencing factors is what drove it

---

[10] To the extent the sentencing court looked to these arrests and charges to find "a potential involvement in criminal conduct," (AA 31), any alleged error in reaching that determination cannot be deemed pervasive when Villodas affirmed to the court that he "does have a predisposition" that could be seen "in his record." (AA 42).

to impose its sentence, Villodas could not show the claimed sentencing error was extraordinary and compelling.

E.    *Villodas entered into a plea agreement that militates against finding an extraordinary and compelling reason*

That Villodas pleaded guilty under a favorable plea agreement and was sentenced in accordance with that agreement also weighed against deeming his claim of legal error an extraordinary and compelling reason.

Indeed, Villodas entered into an agreement with the United States pursuant to which he would plead guilty to the firearm charge (count three) and the United States would dismiss the others, including the machinegun charge. (DE 35). This meant that Villodas's minimum sentencing exposure dropped from at least 360 months in prison to 60 months. (DE 62 at 14-16). The parties agreed that while the United States could recommend a sentence up to 204 months of imprisonment, Villodas could only ask for a sentence as low as 96 months in prison. (DE 35 at 3). He received a 144-month sentence, and the machinegun charge was dismissed. (AA at 53 and 61-62). Because Villodas received the consideration he was due under the agreement, it would be fundamentally unfair to lower his bargained-for sentence based on a bare claim of sentencing error. *See United States v. Bond*, 56 F.4th 381, 384

(4th Cir.), cert. denied, 143 S. Ct. 2596 (2023) (approving district court's balancing of the "benefits of the plea agreement" against the alleged error and its refusal to "disturb the parties' carefully negotiated agreement").

Moreover, the agreement contained a provision under which Villodas waived his right to an appeal if the court sentenced him at or below 204 months. (DE 35 at 4). So, Villodas explicitly agreed not to challenge the sort of alleged sentencing error he sought to challenge in his motion. To make matters worse, Villodas's reply below shows he is attempting to circumvent direct appeal and collateral attack proceedings: He laments that his "appeal window closed long ago [and] any 'habeas petition' is likely time-barred." (AA 94). Allowing Villodas's explicit attempt to use compassionate release as a roundabout way of walking back his plea agreement obligations would also be fundamentally unfair.

F. *The Sentencing Commission's recently issued amended policy statement counsels against finding an extraordinary and compelling reason here*

Earlier this year, the Sentencing Commission promulgated a policy statement that applies to prisoner-initiated compassionate-release motions like Villodas's. *See* 88 Fed. Reg. 28,254 (May 3, 2023); Sentencing Commission

Public Meeting Tr. 27-82 (Apr. 5, 2023) ("4/5/23 Tr.").[11] As relevant here, the amendments allow courts to consider changes in law—including ones that Congress has chosen not to make retroactive—when determining whether a defendant has presented an extraordinary and compelling reason, but only when the defendant received an "unusually long sentence" of which he has served at least ten years. U.S.S.G. § 1B1.13(b)(6), (c).

Villodas invokes this Court's intervening judicial decision in *Marrero-Pérez*, which he contends establishes that the district court committed legal error in sentencing him. But in invoking that intervening decision, Villodas is not relying on a *change* in law. Instead, he seeks to challenge the validity of his sentence based on a case interpreting existing law in a manner that supports a claim of legal error that he did not previously recognize.

An intervening judicial interpretation of a provision of law—even one that disagrees with earlier interpretations—"[i]s not new law." *Fiore v. White*, 531 U.S. 225, 228 (2001) (per curiam). Instead, "[a] judicial construction of a statute is an authoritative statement of what [a provision of law] meant

<hr>

[11] https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf

before as well as after the decision of the case giving rise to that construction"; such a construction does not "'change[]'" the law but merely explains what the law "*always* meant." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313-14 & n.12 (1994); *see also Fleming v. Fleming*, 264 U.S. 29, 31-32 (1924) ("The effect of [a] subsequent decision[] is not to make a new law, but only to hold that the law always meant what the court now says it means."). Such intervening legal determinations should not be considered a "change" in the law for purposes of U.S.S.G. § 1B1.13(b)(6).

Excluding challenges to the legal validity of a conviction or sentence based on intervening judicial decisions, moreover, is consistent with the substantial weight of authority in the courts of appeals. Nearly every circuit to have considered the question has held that a claimed error in a defendant's judgment cannot provide extraordinary and compelling reasons for a sentence reduction, and that a defendant cannot resort to Section 3582(c)(1)(A)(i) to circumvent the normal process of direct and collateral review. *See, e.g., Amato*, 48 F.4th at 65 (2d Cir.); *Henderson*, 858 F. App'x at 469 (3d Cir.); *Ferguson*, 55 F.4th at 270-72 (4th Cir.); *Escajeda*, 58 F.4th at 188 (5th Cir.); *West*, 70 F.4th at 346-47 (6th Cir. 2023); *Martin*, 21 F.4th at 945-46 (7th Cir.); *Crandall*, 25 F.4th at 586 (8th Cir.); *Wesley*, 60 F.4th at 1283-86 (10th

Cir.); *Jenkins*, 50 F.4th at 1200-04 (D.C. Cir.); *see also Roper*, 72 F.4th at 1102 (9th Cir.) (noting issue, but explaining that the defendant there "does not claim that his original sentence violated the Constitution or federal law"). *But see Trenkler*, 47 F.4th at 47-49. The Commission was aware of this consensus view and did nothing to undermine it.

In the absence of an applicable Sentencing Commission policy statement, this Court concluded in *Trenkler* that Section 3582(c)(1)(A)(i), as a statutory matter, would not preclude a court from determining that a sentencing error contributes to a finding of "extraordinary and compelling" reasons for a sentence reduction, 47 F.4th at 47-49, although the Court stressed that the statutory standard "naturally precludes classic post-conviction arguments, without more, from carrying such motions to success," *id.* at 48. The government maintains that this Court's ruling is incorrect. Nevertheless, there was no "more" here and, as this Court repeatedly has acknowledged, once the Sentencing Commission promulgates an applicable policy statement, district courts are bound to ensure that any sentence reductions are "consistent with that guidance." *Ruvalcaba*, 26 F.4th at 25-26; *see also United States v. Gonzalez*, 68 F.4th 699, 704 & n.2 (1st Cir. 2023). Because the newly effective policy statement does not

purport to allow challenges to a sentence's legal validity to contribute to a showing of extraordinary and compelling reasons, such reasons cannot qualify, irrespective of this Court's view of § 3582(c)(1)(A)(i)'s potential reach.

The amended framework for compassionate release motions thus counsels against granting Villodas's motion for compassionate release. Regardless, and again, this Court has said that the extraordinary-and-compelling standard "naturally precludes classic post-conviction arguments, without more, from carrying such motions to success." *Id*. at 48. That is all that Villodas presented, and his appeal must therefore necessarily fail.

## CONCLUSION

Based on the foregoing, this Court should affirm the denial of Villodas's motion.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 14th day of December, 2023.

<div style="margin-left: 50%;">

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

/s/ Ricardo A. Imbert-Fernández
Assistant United States Attorney
U.S. Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

</div>

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

### Certificate of Compliance with Rule 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limitation in Fed. R. AA P. 32(a)(7)(B) because:

   ☑ the brief contains <u>8,767</u> words, excluding the parts of the brief exempted under Fed. R. App. P. 32(f), *or*

   ☐ the brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted under Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements in Fed. R. App. P. 32(a)(5) and the type-style requirements in Fed. R. App. P. 32(a)(6) because:

   ☑ the brief has been prepared in a proportionally spaced typeface and, except for emphases, in a plain, roman style using <u>Book Antiqua</u> in <u>14 point</u>, *or*

   ☐ the brief has been prepared in a monospaced typeface using _____ with _____.

Dated: December 14, 2023              /s/ Ricardo A. Imbert-Fernández
                                      Assistant United States Attorney

CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on December 14, 2023, I filed the above brief with the Clerk of Court using the Court's electronic-filing system, which sent a notification of the filing to the appellant through his attorney of record, a registered user of the system.

/s/ Ricardo A. Imbert-Fernández
Assistant United States Attorney